**Richard John Charles GALUSTIAN,**
**Plaintiff,**

v.

**Lawrence T. PETER, Defendant.**

**Action No. 2:08cv59.**

United States District Court,
E.D. Virginia,
Norfolk Division.

June 18, 2008.

Frank A. Edgar, Jr., Esquire, Marc E. Darnell, Esquire, Kaufman & Canoles PC, Newport News, VA, for Plaintiff.

Robert W. Johnson, II, Esquire, Balch & Bingham LLP, Washington, DC, Christopher S. Anulewicz, Esquire, Kenneth A. Khoury, Esquire, Balch & Bingham LLP, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on defendant Lawrence T. Peter's ("defendant") motion to dismiss on the basis of *forum non conveniens.* For the reasons set forth below, the defendant's motion will be **GRANTED,** subject to the conditions set forth in this Memorandum Opinion.

### I. Factual and Procedural History

The plaintiff, Richard John Charles Galustian ("plaintiff"), is a subject of the United Kingdom and a resident of the United Arab Emirates. He operates a private security company called ISI International, Ltd. ("ISI"), which is incorporated under the laws of Dubai and the United Arab Emirates, and which operates in Iraq. The defendant, Lawrence T. Peter ("defendant"), owns a home in Virginia and spends approximately 330 days per year in Iraq, where he is the Director of the Private Security Company Association of Iraq (the "PSCAI"). The PSCAI is a non-profit organization formed as a forum for the private security industry in Iraq. The PSCAI has over forty members, which include private security firms and other businesses involved in the reconstruction effort in Iraq.

The plaintiff's one-count complaint alleges defamation against the defendant. This claim stems from an email sent by the defendant, on February 7, 2007, allegedly to various members of the PSCAI. The email, in its entirety, said:

Please note the attached document received this office, 6 Feb 07. ISI (http://www.isiiraq.com) is NOT/NOT a member of the PSCAI. All the best, Lawrence.

(*See* Compl. Ex. C.) The document attached to the email was an arrest warrant for the plaintiff, in both its original Arabic and its English translation. The plaintiff claims that the arrest warrant is forged, and claims that this fact has been confirmed by the British Embassy in Baghdad. According to the plaintiff, the warrant was forged by SkyLink Group, a Canadian corporation with whom the plaintiff is involved in a business dispute. The basis of this business dispute appears to be over SkyLink Group's allegedly wrongful denial of the plaintiff's equity interest in a company called SkyLink Arabia, which was formed by the plaintiff, SkyLink Group, and various others who are not involved in the dispute presently before this court.[1] With respect to the action presently before this court, the plaintiff contends that SkyLink Group caused the "phony" warrant to be delivered to the defendant, knowing that he would distribute it, as a tactic in the business dispute between the plaintiff and SkyLink Group. The plaintiff contends that the defendant "knew or recklessly or negligently disregarded" the fact that the warrant was phony, and subsequently refused to send a corrective report when presented with evidence confirming the warrant's falsity. The plaintiff claims that his reputation has been harmed by the warrant's publication, and that he has lost substantial business in Iraq as a result.[2]

On February 26, 2008, the defendant filed a motion to dismiss. The basis of the defendant's motion is two-fold: (1) the case

---

1. The matter between the plaintiff, ISI, SkyLink Group, and various other nonparties is the subject of ongoing litigation in the Canadian court system. The business dispute and the resulting litigation are referred to collectively herein as the "SkyLink dispute."

2. The defendant correctly points out that it is ISI, the plaintiff's company, who would have lost any business, not the plaintiff in his individual capacity. ISI is not a party to this action.

should be dismissed on the basis of *forum non conveniens,* because the Eastern District of Virginia is an inconvenient forum to hear this case; and (2) the plaintiff has failed to state a claim upon which relief can be granted under either Virginia law or Iraqi law.[3] On March 11, 2008, the plaintiff filed a response in opposition to the motion to dismiss. The defendant replied on March 17, 2008. The court held a hearing on the motion on May 15, 2008.[4]

## II. Standard of Review

Dismissal of a case under the theory of *forum non conveniens* is appropriate when "an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (internal quotation marks and citation omitted). A foreign plaintiff's choice of forum is afforded little weight in the *forum non conveniens* equation. *See id.* at 242, 102 S.Ct. 252. The burden is on the moving party to show that a more appropriate alternative forum exists. *See Kontoulas v. A.H. Robins Co.,* 745 F.2d 312, 315 (4th Cir.1984).

The first step in a *forum non conveniens* analysis requires the district court to determine whether an adequate alternative forum exists. "Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction." *Piper,* 454 U.S. at 255 n. 22, 102 S.Ct. 252 (internal quotation marks and citation omitted). Once an alternative forum is identified, it will usually be deemed adequate if it permits litigation of the subject matter in dispute. *See, e.g., Fidelity Bank PLC v. N. Fox Shipping N.V.,* 242 Fed.Appx. 84, 90 (4th Cir.2007) (unpublished); *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC,* 155 F.3d 603, 609 (2d Cir.1998), *cert. denied,* 526 U.S. 1067, 119 S.Ct. 1459, 143 L.Ed.2d 545 (1999).

Once the existence of an alternative forum has been established, the court should then consider the "private interest factors" and the "public interest factors" affecting the convenience of the forum. *Piper,* 454 U.S. at 241, 102 S.Ct. 252; *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The private interest factors include: the relative ease of access to sources of proof, the availability of compulsory process for the attendance of unwilling witnesses, the cost of obtaining the attendance of willing witnesses, the possibility of viewing the premises in question (if applicable), and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839. The public interest factors include: the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity

---

**3.** In light of the court's determination that Virginia is an inconvenient forum to hear this case, the court does not address the portion of the defendant's motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6). For this same reason, and because it does not change the *forum non conveniens* analysis as applied to the defendant, the court finds the plaintiff's motion for leave to amend

his complaint, which was filed on March 26, 2008, to be **MOOT.**

**4.** On May 14, 2008, the plaintiff filed a motion for leave to file the Verification of Glen A. Steer as an exhibit to his brief in opposition to the defendant's motion to dismiss. The plaintiff re-submitted this motion with technical corrections on May 22, 2008. The plaintiff's motion is **GRANTED.**

case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Gilbert,* 330 U.S. at 509, 67 S.Ct. 839.

## III. Analysis

### A. Adequacy of Iraq as an Alternative Forum

In determining whether Iraq is an adequate alternative forum to hear this dispute, the court first looks to whether the defendant is amenable to process there. *See Piper,* 454 U.S. at 255 n. 22, 102 S.Ct. 252. Under Coalition Provisional Authority Order Number 17 ("Order 17"), certain foreign individuals involved in the rebuilding effort in Iraq are immune from Iraqi legal process. *See generally* Coalition Provisional Authority Order Number 17 (Revised) (June 27, 2004), *available at* http://www.cpa-iraq.org/regulations/ 20040627_CPAORD_17_Status_of_ Coalition_Rev_with_Annex_A.pdf. It is not clear whether Order 17 applies to the defendant; the parties dispute this fact. Furthermore, Order 17 was rescinded by a measure passed by Iraq's cabinet on October 30, 2007, but Iraq's Parliament has not made this rescission final. *See* Alissa J. Rubin, *Iraqi Cabinet Votes to End Security Firms' Immunity,* N.Y. Times, Oct. 31, 2007, at A10. The legislation is silent as to whether it will be applied retroactively.

*See Iraq: Pass New Law Ending Immunity for Contractors,* Human Rights Watch (Human Rights Watch, New York, N.Y.), Jan. 9, 2008, at 1. At the hearing, the defendant, through counsel, agreed to submit to process in Iraq and waive any immunity from process that he may have under Order 17. Accordingly, as a condition of this dismissal, the defendant is **ORDERED** to provide, in writing, within eleven (11) days of the date of this Memorandum Opinion, his affirmative submission to the jurisdiction of the Iraqi courts. Furthermore, as a second condition of this dismissal, the defendant is **ORDERED** to provide, within eleven (11) days of the date of this Memorandum Opinion, his written waiver of any statute of limitations defenses he may otherwise raise in Iraq. *E.g., Rankine v. Rankine,* 166 F.3d 333 (4th Cir.1998) (unpublished table decision) ("Generally, the district court's dismissal on *forum non conveniens* grounds should be conditional on the moving party's provision of its consent to the jurisdiction of the proposed alternative forum, together with a waiver of any limitations defenses.").

Once an alternative forum has been selected and the defendant is found amenable to process there, the next step of the adequacy determination requires that the alternative forum permits litigation of the subject matter in dispute. *See, e.g., Fidelity Bank,* 242 Fed.Appx. at 90. In this case, this requirement is satisfied because there is a cause of action for defamation under Iraqi law. *See* Civil Code of Iraq art. 202, 205 (1951).[5]

**5.** Article 126 of the newly drawn Iraqi Constitution states that "existing laws shall remain in force, unless annulled or amended in accordance with the provisions of the Constitution." *Testimony Before the H. Comm. on Foreign Affairs, Subcomm. on Int'l Orgs., Human Rights, and Oversight,* 110th Cong. 4–5 (Feb. 28, 2008) (statement of Professor Michael J. Matheson, George Washington University Law School) (quoting Article 126 of Iraqi Constitution). The provisions of the Iraqi Civil Code governing defamation claims

are currently in effect. (*See* George Hermis Hanna Aff. ¶¶ 5, 8, Ex. A to Def.'s Mem. of Law in Supp. of Mot. to Dismiss Compl.)

The court notes that the plaintiff has submitted the Verification of Glen A. Steer ("Steer"), the Managing Director of a closely held management consulting firm located in Baghdad. (*See* Verification of Glen A. Steer ¶ 1, Ex. 1 to Corrected Mot. For Leave to File Verification of Glen A. Steer *Instanter.*) In his Verification, Steer states that, as a result of his experiences working and living in Iraq

## B. Private Interest Factors

In this case, the private interest factors weigh strongly in favor of dismissal on the basis of *forum non conveniens*. The complained-of conduct occurred in Iraq. The defendant, the judge who purportedly signed the warrant, the translator who translated the warrant, and the investigators whom the plaintiff claims determined it was false, are all in Iraq. The recipients of the email and the evidence of the plaintiff's (or, more accurately, ISI's) losses, are all in Iraq. Furthermore, most, if not all, of the witnesses, including those affiliated with SkyLink Group, are beyond this court's power to order compulsory process.

during the past three years, he is of the opinion that Iraq is not an adequate alternative legal forum for this dispute. (*See id.* ¶¶ 6–9.) Steer is a security consultant and not an attorney, and the court does not give weight to his proffered conclusions as to the legal adequacy and availability of Iraq as an alternative forum. However, the facts offered by Steer with respect to the current conditions in Iraq, as well as the challenges Westerners face there, are germane to the court's analysis of the private interest factors presented in this dispute. *See infra* Part III.B.

On the other hand, in support of his contention that Iraq is an adequate alternative forum, the defendant has submitted the affidavit of George Hermis Hanna ("Hanna"), a member of the Iraq Bar Association who practiced private civil law in Iraq for twenty years, until November, 2005. (*See* Aff. of George Hermis Hanna ¶¶ 2–3.) As noted, Hanna confirmed that Iraq has a civil cause of action for defamation under the Civil Code currently in effect. (*See id.* ¶¶ 5, 8, 10.) Hanna's affidavit, coupled with the defendant's submission to the jurisdiction of the Iraqi courts and his waiver of any statute of limitations defenses, satisfies the court that the defendant has met his burden by showing that Iraq is an adequate alternative forum as that term is understood in the *forum non conveniens* context. *See Fidelity Bank*, 242 Fed.Appx. at 90; *Kontoulas*, 745 F.2d at 315.

6. The court is cognizant of the ongoing instability and dangers present in Iraq. *See, e.g.,* Ernesto Londono & Uthman al-Mokhtar,

In short, trial of this matter in Iraq would be the easiest, most expeditious, and most inexpensive manner of resolving this dispute. *See Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839.[6]

## C. Public Interest Factors

The public interest factors in this case also weigh in favor of dismissal on the basis of *forum non conveniens*. Virginia, as a governmental entity and as a sovereign state of the United States, has very little, if any, vested interests in this case, outside of those that would be associated with any matter involving the instability and dangers of a present global situation.

*Child Bomber Kills 23 in Iraq*, Wash. Post, May 15, 2008, at A11; Sholnn Freeman, *At Least 35 Die as Bombers Hit Wedding Convoy*, Wash. Post, May 1, 2008, at A12. However, due to the unique facts and circumstances of this case, it actually weighs in favor of a dismissal on the basis of *forum non conveniens*. This matter arises from a dispute involving various individuals who were *already* living and working in Iraq as part of the rebuilding effort at the time the complained-of conduct occurred. In other words, the plaintiff and the defendant, as well as the various nonparties involved in the SkyLink dispute, all made the deliberate decision to reside in Iraq well in advance of the commencement of this lawsuit, with full knowledge of the attendant dangers and risks of so doing.

Furthermore, if the court declined to dismiss this action on the basis of *forum non conveniens*, it would necessitate travel to Iraq by the United States-based attorneys involved in this dispute. Unlike the plaintiff, the defendant, and the various witnesses involved in this lawsuit, these individuals did not elect to relocate to Iraq, and presumably, many difficulties would arise if they attempted to travel there in order to gather evidence, interview witnesses, and proceed with all of the measures necessary in order to provide adequate representation to their respective clients. In sum, the unique set of facts presented by this case lend support to the conclusion that litigation of this matter in Iraq is actually the more prudent method of resolving this dispute.

*See supra* note 6. The events in this lawsuit did not take place in Virginia and the plaintiff is not a Virginia citizen. Importantly, the conduct that is the subject of the plaintiff's one-count defamation complaint is inexorably intertwined with the SkyLink dispute, which involves numerous individuals who are likely immune from this court's process. Moreover, Iraq has a strong interest in issues related to foreign nationals doing business there, as well as a strong interest in whether someone is creating false warrants and forging the signature of Iraqi judges. Finally, an Iraqi court is in a much better position to determine whether the warrant at issue was so patently false that the defendant was "knowing or reckless or negligent" in his disregard of this alleged fact.

Choice of law is also an important factor in the public interest analysis. Avoiding unnecessary problems in both conflict of laws and the application of foreign law must be considered, and it is not clear what law is applicable to this case. This factor counsels in favor of dismissal on the basis of *forum non conveniens. See Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Gilbert*, 330 U.S. at 509, 67 S.Ct. 839. The court here may rule on the *forum non conveniens* issue without decisively ruling on the conflict-of-laws issue, thereby avoiding an improper application of applicable foreign law or unnecessarily addressing an undecided issue of Virginia law. *See, e.g., Bybee v. Oper der Standt Bonn*, 899 F.Supp. 1217, 1223 (S.D.N.Y.1995) (dismissing the plaintiff's complaint on the basis of *forum non conveniens* "[w]ithout conclusively resolving the conflict-of-law issue").

For tort claims, such as defamation, Virginia follows the *lex loci delicti commissi* rule (*"lex loci"*), or the "law of the place of the wrong," to determine the applicable substantive rule. *See, e.g., Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir.2007).[7] *Lex loci* is now the minority rule, and in the context of multistate defamation, it has been expressly disfavored by the Second Restatement of Conflicts of Laws. The Virginia courts have yet to address the *lex loci* rule in the context of multistate defamation by means of mass communication.[8]

For purposes of a defamation claim, the "place" of the wrong is the place of publication. *See, e.g., Lapkoff v. Wilks*, 969 F.2d 78, 81 (4th Cir.1992) (applying Virginia law). With respect to defamation claims involving email, the place of publication is deemed to be the place where the email was received (i.e., opened and read). *E.g., Hydro Eng'g, Inc. v. Landa, Inc.*, 231 F.Supp.2d 1130, 1135–36 (D.Utah 2002). In the present dispute, it is not clear where the email was published.[9]

---

7. A federal court sitting in diversity applies the forum state's choice-of-law rules to determine the substantive law governing the claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941).

8. One of the threshold determinations that would be required in the choice-of-law question presented in this matter is whether an email sent to a "distribution list," such as the one at issue in this case, even falls within the purview of the rules contemplated for torts by means of "mass communication." *See infra* at 565–66.

9. In his response to the defendant's motion to dismiss, the plaintiff contends that the defendant's email was published in Virginia; therefore, according to the plaintiff, Virginia is the place of the wrong, and, accordingly, Virginia law applies. In support of this contention, the plaintiff asserts that the email was sent to various members of the PSCAI who have headquarters and offices in Virginia, as well as to various military personnel who are located in the Pentagon. The plaintiff also claims that the email was opened and read by individuals in Virginia. The actual email itself lists only the following in the "to" field: "director@pscai.org." Presumably, this address serves a distribution list. On its face, the email certainly does not show publication in Virginia.

Because *lex loci* has been disfavored in the context of multistate defamation, the Second Restatement of Conflicts of Laws sets forth an alternative approach to the choice-of-law question: the law applicable is that of "the state where the person [defamed] was domiciled at the time, if the matter complained of was published in that state." Restatement (Second) of Conflict of Laws § 150(2) (1971). The Supreme Court of Virginia has yet to adopt or reject this specific provision of the Second Restatement. Accordingly, to determine whether this provision would apply, a federal court sitting in diversity would have to predict what the highest court of Virginia would do when confronted by this situation. *See, e.g., Liberty Mut. Ins. Co. v. Triangle Indus.*, 957 F.2d 1153, 1156 (4th Cir.), *cert. denied*, 506 U.S. 824, 113 S.Ct. 78, 121 L.Ed.2d 42 (1992).[10] It is unnecessary for the court in this case to do this. Moreover, if the court in this case were to follow the Second Restatement approach,[11] foreign law, specifically the law of Iraq, or perhaps that of the United Arab Emirates or the United Kingdom, would govern this dispute. In sum, the choice-of-law problem and the likely application of foreign law weigh in favor of dismissal under the public interest factors. *See Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Gilbert,* 330 U.S. at 509, 67 S.Ct. 839.

## IV. Conclusion

For the reasons set forth above, the defendant's motion to dismiss this action on the basis of *forum non conveniens* will be **GRANTED,** without prejudice to proceed in the Iraqi courts, provided that the defendant complies with the conditions set forth above within eleven (11) days of the date of this Memorandum Opinion.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to counsel for the parties.

**IT IS ORDERED.**

---

Furthermore, even if the email in question was, in fact, sent to individuals with "Virginia-based" email addresses, this (1) still leaves open the question as to whether the email was "published" (i.e., open and read) in Virginia, and (2) still may not be sufficient to warrant the application of Virginia law. *Cf. Hydro Eng'g, Inc.*, 231 F.Supp.2d at 1135–36 (dismissing the plaintiff's defamation claim on the basis of lack of personal jurisdiction over the defendant in Utah when three out of four hundred email addresses were Utah-based addresses, because the mere presence of a Utah-based email address did not establish publication of a defamatory remark in Utah), *Kaempe v. Myers*, No. IP 01–0424–C–H/K, 2001 WL 1397291, at *7 (S.D.Ind. Nov. 6, 2001) (unpublished) (noting that there is no control over where a party receives an email because an email "could have [been] retrieved . . . from anywhere in the world").

**10.** The Second Restatement approach follows the "most significant relationship" test, which has been generally rejected by the Virginia state courts. *McMillan v. McMillan*, 219 Va. 1127, 1130, 253 S.E.2d 662 (1979). When confronted by a similar problem involving multistate defamation and the absence of a Maryland choice-of-law rule on point, the Fourth Circuit, in trying to predict what the highest court of Maryland would do, predicted that the highest court of Maryland would move away from the unsatisfactory *lex loci* rule and follow the Second Restatement in a situation similar to the one presently before this court. *See Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir.1999), *cert. denied*, 528 U.S. 1118, 120 S.Ct. 939, 145 L.Ed.2d 817 (2000).

**11.** *See supra* note 10 and accompanying text.