Richard John Charles **GALUSTIAN**, Plaintiff,

v.

Lawrence T. **PETER**, and Col. John J. **Holly**, USMC, Ret., Defendants.

Action No. 2:08cv59.

United States District Court, E.D. Virginia, Norfolk Division.

Nov. 9, 2010.

---

Frank Alwin Edgar, Jr., Esquire, Marc E. Darnell, Esquire, Kaufman & Canoles P.C., Newport News, VA, for Plaintiff.

Robert W. Johnson, II, Esquire, Christopher S. Anulewicz, Esquire, Kenneth A. Khoury, Esquire, Balch & Bingham LLP, Atlanta, GA, Matthew B. Kirsner, Esquire, Jennifer E. Lattimore, Esquire, Eckert Seamans Cherin & Mellott LLP, Richmond, VA, for Defendants.

## *MEMORANDUM OPINION*

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on several outstanding motions from each of the parties. On April 16, 2010, defendant Lawrence T. Peter ("Peter") filed a Motion to Drop defendant Col. John J. Holly ("Holly") from this litigation, claiming the court lacked personal jurisdiction over Holly and the claims against Holly are time-barred. In that Motion, Peter also moved to dismiss the Verified First Amended Complaint (the "Amended Complaint") on the grounds of *forum non conveniens* or, in the alternative, for failure to state a claim upon which relief can be granted. On May 14, 2010, plaintiff Richard John Charles Galustian ("Galustian")

filed a Motion for an Evidentiary Hearing and on May 18, 2010, he filed a Motion for Leave to Conduct Discovery, both with respect to the issue of Peter's immunity from suit in Iraq. On August 30, 2010, defendant Holly filed a Motion to Dismiss on five grounds: (1) insufficient service of process; (2) lack of personal jurisdiction; (3) protection against suit pursuant to 28 U.S.C. § 2679; (4) count two is time-barred; and (5) counts two and three fail to state a claim upon which relief can be granted due to insufficient pleading. These matters have been fully briefed and are all now ripe for review.

## I. Factual and Procedural History

The relevant factual history is set forth in detail in the court's June 18, 2008, Memorandum Opinion, the court's August 11, 2008, Clarification Order, and the court's December 12, 2008, Memorandum Dismissal Order, and need not be repeated herein. See Galustian v. Peter, 561 F.Supp.2d 559 (E.D.Va.2008) ("Galustian I"); Galustian v. Peter, 570 F.Supp.2d 836 (E.D.Va.2008) ("Galustian II"); Galustian v. Peter, 590 F.Supp.2d 804 (E.D.Va.2008) ("Galustian III"); see also Galustian v. Peter, 591 F.3d 724 (4th Cir. 2010) ("Galustian IV").[1] The court previously dismissed this action, without prejudice, on the basis of forum non conveniens. and, accordingly, found Galustian's Motion to Amend the Complaint, which sought to add defendant Holly, to be moot. On January 15, 2010, the Fourth Circuit reversed, finding that Galustian was entitled to amend the complaint without leave of this court, and, therefore, this court's dismissal on the grounds of forum non conveniens was premature. Galustian IV, 591 F.3d at 730–31 ("Because Holly was rightfully added as a defendant, the forum non conveniens ruling was premature. For a case to be dismissed for forum non conveniens, the alternate forum must be available as to all defendants." (citation omitted) (emphasis in original)). However, the Fourth Circuit "express[ed] no opinion as to the substance of the forum non conveniens issue." Id. at 731.[2]

On March 5, 2010, pursuant to the Fourth Circuit mandate issued on February 24, 2010, the court vacated its December 12, 2008, Memorandum Dismissal Order. On March 26, 2010, Galustian filed an Amended Complaint, adding Holly as defendant.[3] In addition to the defamation claim previously alleged against Peter, the Amended Complaint adds civil and statutory conspiracy claims against Peter and Holly. In particular, the Amended Complaint alleges that Holly gave Peter the Iraqi warrant bearing Galustian's name, even though Holly knew or should have known it was fraudulent, for Peter to distribute to members of the Private Security Company Association of Iraq ("PSCAI"), of which Peter is the Director.[4] Although Holly admits delivering the warrant to PSCAI, he contends his motivation was merely to inform PSCAI that Iraqi author-

1. The court notes that the related matter between Galustian, ISI International, Ltd., SkyLink Group, Holly and other nonparties in the Canadian court system, see Galustian I at 561 n. 1, was dismissed for lack of jurisdiction. See Holly Mot. to Dismiss Compl. Ex. A, ECF No. 83–1. Galustian and ISI International, Ltd., have appealed that decision in Canada.

2. The Fourth Circuit did offer this court "some guidance" on the forum non conveniens issue, which will be discussed below.

3. Holly is a resident of the State of California. At the relevant time of the issues in this lawsuit, he was the Director of Logistics for the United States Army Corps of Engineers, Gulf Region Division, in Iraq.

4. PSCAI is a non-profit trade association serving the private security industry in Iraq.

ities were trying to apply pressure on private security companies. *See* Holly Mem. Supp. Mot. Dismiss Compl. 3–4, ECF No. 83. Similarly, Peter admits receiving the warrant from Holly and forwarding it to PSCAI members, but he contends his motivation was merely to inform PSCAI members of what appeared to be a significant development, i.e., that an Iraqi court was attempting to assert jurisdiction over a private contractor. *See* Peter Mem. Supp. Mot. Dismiss Compl. 16, ECF No. 62.

On August 17, 2010, Galustian returned an executed Summons as to Holly, which indicated that Galustian's process server effected substitute service by leaving "the summons at the individual's residence ... with 'Jane' Holly ... and mailed a copy to the individual's last known address." Summons on Am. Compl., ECF No. 80. Holly admits that his wife found a copy of the Summons and Complaint placed between the handles of the front door, but he contends that Galustian failed to effect proper service.

## II. Analysis

### A. Holly's Motion to Dismiss [5]

The existence of personal jurisdiction is a question of law, with the burden on the plaintiff to prove the grounds for jurisdiction by a preponderance of the evidence. *See New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir.2005) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)). However, when the court addresses the issue on the basis of "motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs*, 886 F.2d at 676 (citation omitted). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citation omitted).

Galustian argues that this court has personal jurisdiction over Holly, a resident of California, pursuant to his involvement in a conspiracy with Peter to defame Galustian. At the relevant time, both Holly and Peter were employed in Iraq.[6] Galustian alleges that Peter knowingly emailed a fraudulent Iraqi warrant, which he had obtained from Holly, to members of PSCAI. Galustian further alleges that the defamatory email was published in Virginia, as "at least nine PSCAI members have operating facilities within the Commonwealth of Virginia, and other government-related individuals, upon information and belief, received the Warrant in or through the Pentagon, which is located in the Commonwealth of Virginia." Am. Compl. ¶ 68, ECF No. 59. For purposes of the personal jurisdiction analysis, the court will assume that the email sent by Peter to members of PSCAI was actually opened and read in Virginia. Thus, Galustian claims that, given the alleged conspiracy between Peter and Holly, this court has jurisdiction over Holly based upon Peter having sent the defamatory email that was opened in Virginia.[7]

---

5. The court addresses this motion first because it affects disposition of other motions before the court, as will be addressed herein.

6. *See supra* notes 3–4 and accompanying text.

7. The fact that Peter sent the allegedly defamatory warrant, via email, to the PSCAI listserv, rather than via mail, does not lessen Galustian's burden to make out a prima facie case for personal jurisdiction. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 n. 5 (4th Cir.2009).

██ Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise jurisdiction over a defendant in the manner provided by state law. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir.2002) (citing *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir.1997)). Because Virginia's long-arm statute aims to extend personal jurisdiction to the extent permissible under the federal Due Process Clause, the statutory inquiry merges with the constitutional inquiry. *Id.* (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996)). Thus, the court must determine whether Holly has "minimum contacts" with Virginia such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).[8]

██ In the conspiracy context, specific jurisdiction need not be based exclusively on the actions of the defendant in question. *See Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F.Supp.2d 513, 538–39 (E.D.Va.2009).[9] Rather, in some instances, personal jurisdiction may be based upon acts committed by a co-conspirator. *Id.* at 539 (citing 16 James Wm. Moore et al., *Moore's Federal Practice* § 108.42[3][b], at 108–67 (3d ed.

1997)). The rationale behind the conspiracy theory of jurisdiction is that "a defendant who joins a conspiracy knowing that acts in furtherance of the conspiracy have taken or will take place in the forum state … has purposefully availed himself of the privileges of that state and should reasonably expect to be haled into court there." *See id.* (citation omitted); *see also Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State … [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

██ In this case, however, Galustian has alleged no facts to support the conclusion that Holly purposefully availed himself of the Virginia forum. The alleged conspiracy between Holly and Peter was formed in Iraq. Similarly, Peter sent the allegedly defamatory email from his location in Iraq. The only alleged contact with Virginia is the opening of the allegedly defamatory email in this forum. Such an allegation implies that Galustian has suffered some degree of harm in Virginia to warrant jurisdiction over Holly, pursuant

---

**8.** Although the intent of Virginia's long-arm statute is to extend personal jurisdiction to the extent permissible under the federal Due Process Clause, it is possible that a non-resident's contacts with Virginia could satisfy due process and not fall within the literal terms of Virginia's long-arm statute. *Consulting Eng'rs Corp.*, 561 F.3d at 277 n. 4 (citations omitted). However, where, as here, the requirements of due process have not been met, the court need not reach the issue of "whether Virginia's arguably more stringent long-arm statute would have *also* denied the court personal jurisdiction." *See id.* (emphasis in original).

**9.** Personal jurisdiction may be premised upon a finding of either specific jurisdiction, which arises from the defendant's contacts with the forum state related to the lawsuit, or general jurisdiction, which arises from the defendant's more persistent, yet unrelated, contacts with the forum. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir.2002). Galustian does not contend that this court has general jurisdiction over Holly, who is a resident of California. Therefore, the court will only address specific jurisdiction.

to his conspiracy with Peter. The court will, therefore, evaluate the defamatory effects in Virginia of the email sent by Peter.

■ Under the "effects test," Galustian "must establish that specific jurisdiction is proper by showing that '(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir.2009) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 398 n. 7 (4th Cir.2003)). Even assuming that the email was in fact defamatory so as to constitute an intentional tort, Virginia was neither the focal point of the harm nor of the tortious activity.

The Amended Complaint contains no allegations suggesting that Virginia was the focal point of the alleged harm. Rather, Galustian alleges that GEMINI ISI LIMITED ("ISI"), the commercial security, aviation, and defense consultancy company of which he is beneficial owner and director, has lost substantial business in Iraq as a result of his damaged reputation.[10] Although Galustian has alleged that the email was opened in Virginia, Galustian is a subject of the United Kingdom and a resident of the United Arab Emirates, who does business in the Middle East, and, therefore, the majority of the damage to his reputation would be expected to occur elsewhere, not in Virginia. *See Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct.

1482, 79 L.Ed.2d 804 (1984) (noting that the defendants knew that the brunt of the defamatory injury would be felt by the plaintiff in the state in which she lived and worked and where the publication had the greatest circulation). As Galustian has alleged no facts to support damage suffered to his reputation in Virginia, independent of his business in Iraq, the court finds that Iraq, and not Virginia, was the focal point of the alleged harm.

Moreover, Galustian has alleged no facts to suggest that Virginia was the focal point of the tortious activity. In that regard, Galustian must allege that Holly expressly aimed his tortious conduct at the forum. To the contrary, the purpose of the conspiracy, as alleged in the Amended Complaint, has no connection with the Virginia forum.[11] In addition, Galustian has alleged no facts to suggest that the email sent by Peter was intended for a Virginia audience, even if it was in fact opened in Virginia. *See Young*, 315 F.3d at 263–64 (finding no personal jurisdiction over Connecticut newspapers that had published and posted on their websites allegedly defamatory articles involving a Virginia prison warden, as the websites and articles were aimed at a Connecticut, rather than Virginia, audience). Accordingly, the court finds that Virginia was not the focal point of the allegedly tortious activity. *Cf. Dring v. Sullivan*, 423 F.Supp.2d 540, 549 (D.Md.2006) (finding no personal jurisdiction in Maryland over non-resident defendant who sent allegedly defamatory email to listserv, including only a small number of Maryland recipients).

10. GEMINI ISI LIMITED was formerly known as ISI International, Ltd.

11. The alleged purpose of the conspiracy was to discredit and intimidate Galustian in the Canadian litigation so that Galustian would abandon the litigation and his claimed inter-

est in SkyLink Arabia. Am. Compl. ¶¶ 29–43, ECF No. 59. The Canadian litigation concerned a ten percent interest in SkyLink Arabia, which interest was allegedly promised to Galustian, but was obtained by Holly. Am. Compl. ¶ 44; *see supra* note 1.

As Virginia was neither the focal point of the alleged harm nor of the alleged tortious conduct, Galustian has failed to allege facts sufficient to support jurisdiction over Holly based upon the "effects test." Because Galustian has alleged only attenuated contact between Holly and this forum, the court FINDS that it lacks personal jurisdiction over Holly. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("Th[e] purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . ." (citations omitted)); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (noting personal jurisdiction is inappropriate if the defendant could not "reasonably anticipate being haled into court" in that forum). Therefore, Holly's Motion to Dismiss is **GRANTED.** Given the court's finding that it lacks jurisdiction over Holly, it need not reach the other issues raised in Holly's Motion to Dismiss.

## B. Peter's Motion to Drop Holly From the Litigation

Considering that this court granted Holly's Motion to Dismiss on the grounds that it lacks jurisdiction over Holly, Peter's Motion to Drop Holly from the Litigation is **DENIED as MOOT.**

## C. Galustian's Motion for an Evidentiary Hearing and Motion to Conduct Discovery

Galustian filed a Motion for an Evidentiary Hearing and a Motion for Leave to Conduct Discovery with respect to the applicability of Coalition Provisional Authority Order Number 17 ("Order 17") to defendant Peter. In particular, Galustian seeks a statement, under oath, from Peter that he is not entitled to Order 17 immunity. *See* Pl.'s Br. Supp. Mot. Evidentiary Hr'g & Leave to Conduct Limited Disc. 6–7, ECF No. 70. Peter, however, has already submitted an affidavit in which he specifically denies being a part of each group granted immunity under Order 17. *See* Peter Aff. ¶¶ 6–11 (Nov. 8, 2008), ECF No. 38–1. Peter also provided the court with a letter from the State Department indicating that he is not subject to immunity under Order 17. State Dept. Resp. 2, ECF No. 37–9.[12] This court previously found that the "best available evidence" of whether Order 17 applies to Peter is the State Department's assertion that there is " 'no basis upon which to conclude that Mr. Peter is entitled to any immunity that could be waived by the United States, as a Sending State.' " *Galustian III*, 590 F.Supp.2d at 807 (quoting State Dept. Resp. 2).[13]

This case has been in litigation for over two years and the court has already ruled that Peter has satisfied his burden to show

---

**12.** Peter first provided an express waiver of Order 17 immunity, but the court determined such a waiver ineffective under the terms of Order 17. *Galustian II*, 570 F.Supp.2d at 838 ("Requiring the defendant himself, as opposed to the United States as the defendant's Sending State, to waive any immunity that the defendant may have under Order 17, by the terms of Order 17, appears insufficient."); Def.'s Waiver of Order 17 Immunity & Statute of Limitations Defense, ECF No. 30.

**13.** Although Galustian argued that Peter "purposefully withheld information from the State Department in requesting a waiver of immunity," the court found that it could not "conclude, based on the information before it, that the State Department's conclusion was flawed." *Galustian III*, 590 F.Supp.2d at 807 (footnote omitted). On appeal, the Fourth Circuit did not address this court's holding regarding Peter's immunity under Order 17. The only immunity issue referenced under Order 17 was as to Holly. *Galustian IV*, 591 F.3d at 731 n. 5.

that he is not subject to Order 17 immunity. *Id.*; *see also Galustian IV*, 591 F.3d at 731 ("[T]he defendant has the burden to 'provide enough information to the District Court' to demonstrate that the alternative forum is both available and adequate." (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981))). Other than Galustian's own self-serving statements, he has failed to provide this court with any substantiated contrary evidence.[14] The court fails to see what would be gained by an evidentiary hearing and unnecessary discovery, at the expense of both time and resources in already protracted litigation. Accordingly, Galustian's motions are **DENIED.**

### D. Peter's Motion to Dismiss

The common-law doctrine of *forum non conveniens* applies when the defendant seeks an alternative forum outside of the United States. *See Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 315 (4th Cir.1984). When moving to dismiss an action on the grounds of *forum non conveniens*, the defendant has the burden to prove the alternative forum is both avail-

able and adequate. *See Galustian IV*, 591 F.3d at 731. The availability requirement is ordinarily satisfied when "the defendant is 'amenable to process' in the [foreign] jurisdiction." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The adequacy requirement is satisfied when "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Galustian IV*, 591 F.3d at 731 (citations omitted). The forum is considered inadequate, however, when it "does not permit litigation of the subject matter of the dispute." *Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. 252.

Once the defendant has established the existence of an adequate and available forum, the court must weigh the relevant private and public interest factors enumerated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).[15] The defendant "must provide

---

**14.** Galustian has not presented any new material since the court previously found that Peter had satisfied his burden to show that he is not subject to Order 17 immunity. Nothing has prevented Galustian from seeking a contrary opinion, or other substantiated evidence, from the State Department or other public entity over the past two years. Indeed, Galustian asserted that "[o]n November 25, 2008, Galustian, through counsel, submitted written materials to the Department of State for its consideration in light of Peter's use of the Sending State Letter in this matter." Pl.'s Br. Supp. Mot. Evidentiary Hr'g & Leave to Conduct Limited Disc. 4, ECF No. 42. Nearly two years later, the court has not received any update on Galustian's submission. The court does not know whether Galustian failed to pursue the matter or whether he received a response from the State Department.

**15.** The private interest factors include: the relative ease of access to sources of proof, the

availability of compulsory process for the attendance of unwilling witnesses, the cost of obtaining the attendance of willing witnesses, the possibility of viewing the premises in question (if applicable), and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839. The public interest factors include: the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. 839.

enough information to enable the [court] to balance the parties' interests." *Piper*, 454 U.S. at 258, 102 S.Ct. 252. Nevertheless, an "exhaustive comparative law analysis" is not required from the parties or the court. *Galustian IV*, 591 F.3d at 732.

■ This court previously dismissed this action, without prejudice, on the grounds of *forum non conveniens*, finding Iraq to be an available and adequate forum, and finding the relevant public and private factors to weigh in favor of dismissal. *See Galustian I*, 561 F.Supp.2d at 563–66; *Galustian III*, 590 F.Supp.2d at 807. On appeal, the Fourth Circuit reversed solely on the grounds that Galustian should have been allowed to amend the complaint to add defendant Holly. *Galustian IV*, 591 F.3d at 729. Although the Fourth Circuit "express[ed] no opinion as to the substance of the *forum non conveniens* issue," it did offer this court "some guidance" as to how to proceed on remand, highlighting two issues in particular for the court's consideration: (1) whether the record is sufficient to establish Iraq as an adequate and available forum; and (2) whether the balancing of public and private factors still favors dismissal, when placing greater weight on Peter's Virginia residency than previously given by this court. *Id.* at 731–32. With the benefit of the Fourth Circuit's guidance, this court reevaluates its *forum non conveniens* analysis.

### 1. Availability of the Iraqi Forum

In order to dismiss a case for *forum non conveniens*, the court must find that Iraq is an available forum as to all defendants. *Galustian IV*, 591 F.3d at 731 (citing *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir.2000)). Because this court previously dismissed this action before Holly was properly joined as a defendant, the Fourth Circuit found this court's ruling on the availability of the Iraqi forum to be premature. *See Galustian IV*, 591 F.3d at 731 ("[W]here ... no evidence was proffered regarding the availability of the forum as to Holly, dismissal for *forum non conveniens* was premature."). However, now that Holly has been dismissed from the litigation, *see supra* Part II.A., the court need only determine whether Iraq is available as to Peter, the remaining defendant.

The issue of availability turns on whether Peter is immune from process in Iraq due to Order 17. As discussed above, Peter has satisfied his burden of proving that he is not subject to Order 17 immunity. *See supra* Part II.C. Moreover, even if an Iraqi court were later to find Peter immune, the State Department may always waive that immunity on Peter's behalf. *Galustian III*, 590 F.Supp.2d at 807 n. 6.[16] Accordingly, the court finds that Peter has satisfied his burden in showing Iraq to be an available forum.[17]

16. *See supra* note 12 and accompanying text.

17. The United Nations Security Counsel Resolution 1790, which gives legal effect to Order 17 immunity, expired on December 31, 2008. *See Galustian III*, 590 F.Supp.2d at 807. Effective January 1, 2009, the Status of Forces Agreement ("SOFA") now provides that "Iraq shall have the primary right to exercise jurisdiction over United States contractors and United States contractor employees." SOFA Art. 12, § 2, Def.'s Resp. to Pl.'s Mot. Evidentiary Hr'g & Leave to Conduct Limited Discovery Ex. A, ECF No. 43–1. As previously noted by this court, the retroactive effect of the SOFA is unclear. *See Galustian III*, 590 F.Supp.2d at 807; *see also McGee v. Arkel Intern., LLC*, 716 F.Supp.2d 572, 579 n. 6 (S.D.Tex.2009) ("[T]he retroactive effects of the SOFA and laws to be passed pursuant to it remain unclear."). However, one court in this district has found Iraq to be an unavailable forum, for purposes of *forum non conveniens*, due to Order 17 immunity with respect to incidents occurring before January 1, 2009.

## 2. Adequacy of the Iraqi Forum

On appeal, the Fourth Circuit questioned whether the evidence on record was sufficient to establish the adequacy of the Iraqi forum. The court indicated that the affidavit of Iraqi law expert, George Hanna ("Hanna"), "fell short of showing the availability of a defamation remedy" in Iraq, noting concerns as to whether civil damages for defamation were available in the absence of another injury, and, as to whether a foreign citizen, like Galustian, could bring suit in an Iraqi court. *See Galustian IV*, 591 F.3d at 732. The Fourth Circuit, however, did "not question Mr. Hanna's credentials as an expert on the law of Iraq," and noted that it was possible "for Peter to submit a supplemented affidavit should the issue of *forum non conveniens* arise again." *Id.*

In response to the Fourth Circuit's concern, Peter has now submitted the declaration of Ahmed Saleh Al–Janabi ("Al–Janabi"), a partner at Mena Associates, one of the leading law firms in Baghdad. Al–Janabi Decl. ¶ 4, ECF No. 62–1. Al–Janabi states that "[u]nder Iraqi law, there is a civil cause of action for harm of reputation (defamation) that is based on liability in tort." *Id.* ¶ 7. While Article 202 of the Iraqi Civil Code No. 40 of 1951 provides a civil cause of action for *physical* damage to a person, Article 204 indicates that "[a]ny negligence that causes a third party another form of damage, *other than described in the foregoing provisions,* obliges [the tortfeasor] to pay compensation." Al–Janabi Decl. Ex. A (emphasis added). The phrase "other than described in the foregoing provisions," used in Article 204, aims "to expand possible causes of action beyond the (physical) personal injuries dealt with in the (foregoing) [A]rticle 202 [of the] Civil Code." Al–Janabi Decl. ¶ 9. Thus, Article 204 provides a civil cause of action for non-physical injuries, such as defamation. *See id.* Article 205 then specifies that "[t]he claim to compensation comprises moral damage as well, and all negligence as to a person's ... honor, or reputation, or his social standing, or his repute in business, makes the tortfeasor liable to pay compensation." *Id.* Ex. A. The court is satisfied that these provisions provide a cause of action for defamation, which includes damages for reputational harm, regardless of the existence of another physical injury.[18]

See *In re XE Servs. Alien Tort Litig.*, 665 F.Supp.2d 569, 602 (E.D.Va.2009) ("All of the parties' experts on Iraqi law agree that [Order 17] protects defendants from civil liability in Iraqi courts on the claims alleged in these cases."). As the retroactive effect of the SOFA has always been unclear, the court does not rely on it in its *forum non conveniens* ruling.

18. The Fourth Circuit's concerns regarding the availability of damages for reputational injury, independent of another injury, seem to stem from the translation of Article 204. In the translation previously submitted by Hanna, Article 204 of the Iraqi Civil Code read: "Every *assault* which causes other than the injuries mentioned in the preceding Articles entails payment of compensation." Def.'s Reply Mem. Supp. Mot. Dismiss Compl. Ex. 1, ECF No. 11–1 (emphasis added). Article 205 then read: "The right to compensation *also covers* moral injury: any encroachment (assault) on the ... reputation ... of a third party renders the perpetrator liable for compensation (damages)." *Id.* (emphasis added). Presumably, the Fourth Circuit interpreted the term "assault," used in Article 204, and the phrase "also covers," used in Article 205, to imply that damages for reputational harm are only available when occurring as part of another injury. *See Galustian IV*, 591 F.3d at 732. Al–Janabi, however, has substituted the word "negligence" for the word "assault" in Article 204. Although "assault" represents a literal translation of the Arabic term in question, because modern Arabic tort law is based on the French Civil Code, the translated Arabic term more "broadly denotes ... conduct in breach of the required standard of care." Al–Janabi Decl. ¶ 8 n. 1. This difference in translation, coupled with Al–Janabi's explana-

Moreover, Al–Janabi states that there "are no legal restrictions under Iraqi law which would prevent a foreigner from bringing a claim in Iraqi court." *Id.* ¶ 14. The relevant jurisdictional provision, Article 15–c of the Iraqi Civil Code, indicates that a "foreigner can be tried in the court of Iraq ... [i]f the litigation is based on an event that occurred in Iraq." *Id.* Ex. A. According to this provision, "an Iraqi court is competent to hear a defamation claim against a foreign national if the defamation took place in Iraq. The nationality of the plaintiff is irrelevant according to [the] rule." *Id.* ¶ 13. The court is satisfied that Galustian, as a foreign plaintiff, may bring an action in Iraq against Peter, an American citizen, based upon alleged defamation that occurred in Iraq. Thus, Peter has satisfied his burden with respect to the adequacy of the Iraqi forum.[19]

### 3. The Private and Public Interest Factors

This court previously found the private and public interest factors in this case to weigh in favor of dismissal. *See Galustian I,* 561 F.Supp.2d at 564–66. On appeal,

however, the Fourth Circuit indicated that this court "should have given closer scrutiny to the location of the defendant's residence" in Virginia. *Galustian IV,* 591 F.3d at 732. Although a foreign plaintiff's choice of forum is entitled to little deference, that "lack of deference is muted ... when the defendant is a resident and citizen of the forum he seeks to have declared inconvenient for litigation, as Peter is here." *Id.* Nevertheless, the Fourth Circuit did "not suggest that Peter's place of residence is dispositive," and merely instructed this court to examine the fact more closely, given that " 'the central focus of the *forum non conveniens* inquiry is convenience.' " *Id.* (quoting *Piper,* 454 U.S. at 249, 102 S.Ct. 252).

Even giving more weight to Peter's Virginia residence, however, the court still finds that the private and public factors favor dismissal. Although Peter owns a home in Virginia, it is not contested that he currently spends approximately 330 days per year in Iraq, in his capacity as Director of PSCAI. *Galustian I,* 561 F.Supp.2d at 561. While Peter is techni-

tion of the relationship between Articles 202 and 204, leads the court to conclude that a civil cause of action is available for defamation, independent of any other physical injury.

19. Galustian contends that Al–Janabi's declaration is deficient in failing to address: "(1) the nature of the damages and remedy available for the claim of harm to reputation under Iraqi law; and (2) the speed at which the proceeding would move through the Iraqi courts." Pl.'s Br. Opp. Def.'s Mot. to Drop Party & Dismiss 12, ECF No. 68. With respect to the remedy available in Iraq, dismissal for *forum non conveniens* may be improper when "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is *no remedy at all.*" *Piper,* 454 U.S. at 254, 102 S.Ct. 252 (emphasis added). However, Al–Janabi has specifically described to the court the obligation under Iraqi law to pay damages for "moral harm," including damage to another's reputation. Al–Janabi

Decl. ¶ 11. Galustian has given this court no indication as to why the Iraqi remedy would be inadequate.

Moreover, "the prospect of delay presented by the alternative forum does not typically render the alternative forum inadequate." *Tang v. Synutra Intern., Inc.,* No. DKC 09–0088, 2010 WL 1375373, at \*9 (D.Md. Mar. 29, 2010) (citations omitted). In the case cited by Galustian, *Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220 (3d Cir.1995), there was evidence to suggest dismissal in favor of an Indian forum would cause a fifteen-year delay in the litigation. *Id.* at 1228. In this case, however, Al–Janabi specifically indicated that the "Iraqi court function with a degree of efficiency, transparency and fairness that is comparable to other jurisdictions in the region." Al–Janabi Decl. ¶ 16. Galustian has presented no evidence to suggest that dismissal in favor of the Iraqi forum would result in unreasonably prolonged delays.

cally a Virginia resident, given his brief sojourn in the state, traveling to this forum from Iraq, and back to Iraq from this forum, for pre-trial matters and trial would obviously be expensive, time-consuming, and difficult,[20] and would force Peter away from his work for appreciable periods of time. Moreover, the other private interest factors, discussed previously by this court on the original Motion to Dismiss, still strongly favor dismissal:

> The complained-of conduct occurred in Iraq. The defendant, the judge who purportedly signed the warrant, the translator who translated the warrant, and the investigators whom the plaintiff claims determined it was false, are all in Iraq. The recipients of the email and the evidence of the plaintiff's (or, more accurately, ISI's) losses, are all in Iraq. Furthermore, most, if not all, of the witnesses, including those affiliated with SkyLink Group, are beyond this court's power to order compulsory process. In short, trial of this matter in Iraq would be the easiest, most expeditious, and

most inexpensive manner of resolving this dispute.

*Id.* at 564.

Similarly, the public interest factors, previously discussed by this court, still weigh heavily in favor of dismissal. *Id.* at 564–65. As the underlying events transpired in Iraq, Virginia has little vested interest in this case, while Iraq has a strong interest. *Id.* Moreover, "an Iraqi court is in a much better position to determine whether the warrant at issue was so patently false that the defendant was 'knowing or reckless or negligent' in his disregard of this alleged fact." *Id.* at 565. Finally, "unnecessary problems in both conflict of laws and the application of foreign law must be considered, and it is not clear what law is applicable to this case." *Id.*[21] In sum, any convenience gained from Peter's Virginia residence is overwhelmed by the multitude of other factors that favor the Iraqi forum.[22] Thus, Peter's motion to dismiss the Amended Complaint on the basis of *forum non conveniens* is **GRANTED**.[23] Given this finding, the court need

---

**20.** The difficulty of arranging flights and making travel plans to and from Iraq is apparent.

**21.** As previously indicated, the court "may rule on the *forum non conveniens* issue without decisively ruling on the conflict-of-laws issue, thereby avoiding an improper application of applicable foreign law or unnecessarily addressing an undecided issue of Virginia law." *Galustian I,* 561 F.Supp.2d at 565 (citing *Bybee v. Oper der Standt Bonn,* 899 F.Supp. 1217, 1223 (S.D.N.Y.1995)). However, although this court has not decisively ruled that Iraqi law applies in this case, the Fourth Circuit has found, in the context of multistate defamation, that the highest court of Maryland would likely move away from the unsatisfactory *lex loci* rule towards the approach of the Second Restatement of Conflict of Laws. *See Galustian I,* 561 F.Supp.2d at 566 n. 10 (citing *Wells v. Liddy,* 186 F.3d 505, 527–28 (4th Cir.1999), *cert. denied,* 528 U.S. 1118, 120 S.Ct. 939, 145 L.Ed.2d 817 (2000)). If this court were to follow the Second Restatement approach, the law of Iraq, or per-

haps even the United Arab Emirates or the United Kingdom, would govern the dispute. *See id.* at 566. To the extent foreign law applies to this case, such fact would weigh heavily in favor of dismissal. *See Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Gulf Oil,* 330 U.S. at 509, 67 S.Ct. 839.

**22.** Galustian contends that a Virginia forum is necessary so that he may enforce any favorable judgment against Peter's property located in this forum. Peter rightly points out, however, that the Foreign Country Money–Judgments Recognition Act, Va. Code Ann. § 8.01–465.9, would also allow for enforcement of any favorable Iraqi judgment for money damages.

**23.** As before, "[a]ny statute of limitations applicable to refiling an action in this court will be tolled, as appropriate, during the pendency of proper related proceedings in Iraq." *Galustian III,* 590 F.Supp.2d at 807 n. 7. If Galustian files this action in Iraq only to find that

not reach the portion of Peter's Motion to Dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III. Conclusion

For the reasons set forth above, the court **GRANTS** Holly's Motion to Dismiss for lack of personal jurisdiction and, accordingly, **DENIES** as **MOOT** Peter's Motion to Drop Holly as a Party. The court **DENIES** Galustian's Motion for an Evidentiary Hearing and his Motion for Leave to Conduct Discovery. The court **GRANTS** Peter's Motion to Dismiss on the grounds of *forum non conveniens.* This action is, therefore, **DISMISSED** without prejudice, to be properly filed in Iraq.

The Clerk is DIRECTED to forward a copy of this Memorandum Opinion to counsel for the parties.

**IT IS SO ORDERED.**

Peter is subject to Order 17 immunity, he may refile his suit in the Eastern District of Virginia. *See id.* at 807.