**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 06-1299**

—————————

FIDELITY BANK PLC,

                              Plaintiff - Appellee,

        versus

NORTHERN FOX SHIPPING N.V.; ERES N.V. BELGIUM,
in personam,

                              Defendants - Appellants,

        and

M/T TABORA, her engines, boilers, etc. In rem,
et al.,

                              Defendant,

        and

THE MASTER OF THE M/T TABORA,

                              Garnishee.

—————————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William D. Quarles, Jr., District Judge.
(1:05-cv-00871-WDQ)

—————————

Argued:  January 31, 2007          Decided:  July 13, 2007

—————————

Before MICHAEL, MOTZ, and KING, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

**ARGUED:** JoAnne Zawitoski, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellants.  James Dygert Skeen, SKEEN & KAUFFMAN, L.L.P., Baltimore, Maryland, for Appellee.  **ON BRIEF:** Alexander M. Giles, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellants.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The defendants Eres N.V. Belgium (Eres) and Northern Fox Shipping N.V. (Northern Fox) appeal the voluntary dismissal of a complaint filed by Fidelity Bank PLC (Fidelity) against them for breach of contract and conversion. Eres and Northern Fox also appeal the forum non conveniens dismissal of the counterclaim that they filed against Fidelity. We affirm the Fed. R. Civ. P. 41(a)(2) dismissal of Fidelity's complaint because we conclude that dismissal did not cause Eres and Northern Fox to suffer plain legal prejudice. While we also affirm the forum non conveniens dismissal of two of the three counts in the counterclaim, we vacate the district court's dismissal of the count alleging the wrongful arrest of the TABORA, a cargo vessel. On the record before us, it is not possible to determine whether Nigeria provides an adequate alternative forum for adjudication of this claim. Moreover, the relevant public and private interest factors with respect to whether the wrongful arrest counterclaim is subject to a forum non conveniens dismissal require further consideration and weighing by the district court.

I.

In September 2002 Eres, a Belgian company, entered into a contract to sell 25,000 metric tons of bitumen to Chief Pius Akinyelure of Nigeria. The bitumen was shipped to Nigeria on the

3

TABORA, a vessel owned by Northern Fox, a Netherlands Antilles company.  The sale was financed by Fidelity, a Nigerian bank that held the bills of lading as security.

On October 30, 2002, the TABORA began unloading the bitumen by ship-to-ship transfer off the coast of Lagos, Nigeria.  This work was stopped after only 3,740 tons were unloaded, allegedly because the TABORA and its crew were attacked by armed marauders.  On December 23, 2002, Eres and Northern Fox notified Fidelity that it was unsafe to discharge the cargo to Lagos and requested the designation of an alternate port.  Because Fidelity did not name an alternate port, the TABORA sat in international waters for 118 days.  As a result, Eres and Northern Fox contend that demurrage and cargo heating charges of $32,000 per day accrued, totaling $3,776,000.  Ultimately, Eres and Northern Fox put a lien on the bitumen and sold it for $2,800,000 in partial satisfaction of the unpaid charges.

Fidelity disputes the assertion that the TABORA and its crew were attacked by marauders.  Instead, Fidelity contends that the ship was boarded by the Nigerian police after Chief Akinyelure, the purchaser of the bitumen, made an allegation of fraud against members of the TABORA's crew.  According to Fidelity, there is no reason why any police investigation should have prevented the TABORA from completing delivery of the bitumen.  In any case, on December 17, 2002, after the TABORA's full cargo had not been

4

unloaded, Fidelity filed an in rem action in the Federal High Court of Nigeria, seeking an order of arrest against the ship. Although an arrest order was issued, it was not served because the ship had left Nigerian waters. The Nigerian statement of claim (complaint) also names Eres and Northern Fox as in personam defendants, but they have never been successfully served.

On March 17, 2005, more than two years after the aborted delivery, Fidelity had the TABORA arrested in Curacao, Netherlands Antilles. Eres and Northern Fox had the arrest vacated the next day after convincing a Netherlands Antilles court that Fidelity's claim was barred by the one-year statute of limitations, which was fixed by a bill of lading provision that incorporates the Hague Rules (rules adopted by the country from which the cargo was shipped, the Netherlands Antilles in this case). Specifically, the court concluded that Fidelity failed to show that it had lawfully initiated proceedings in Nigeria on its claim for non-delivery of cargo. After the Netherlands Antilles court vacated the Curacao arrest of the TABORA, Fidelity attempted to revive its 2002 Nigerian action. On March 23, 2005, Fidelity filed an application with the Federal High Court in Nigeria seeking reassignment of the case to a new Justice and the issuance of an order authorizing substituted service of process.

In the meantime, Fidelity learned that the TABORA had arrived in the Port of Baltimore. Thus, on March 31, 2005,

Fidelity filed a verified complaint in the District of Maryland seeking a warrant for the arrest of the TABORA. The complaint also included claims for $8,871,076 in damages against Eres and Northern Fox for breach of contract and conversion. The warrant was issued and served on the same day the complaint was filed, but five days later, on April 5, 2005, the district court vacated the arrest. The district court concluded, like the Netherlands Antilles court, that the in rem claim was time-barred because Fidelity had not offered sufficient proof that it had a pending claim against Eres and Northern Fox in Nigeria or anywhere else.

On April 8, 2005, three days after the Baltimore arrest was vacated, the Federal High Court in Nigeria issued an ex parte order authorizing Fidelity to serve by courier outside the jurisdiction an amended statement of claim on Eres and Northern Fox. Fidelity promptly filed a motion asking the district court in Maryland to reconsider its order vacating the arrest of the TABORA. Fidelity argued that the recent order of the Nigerian court conclusively established that the Baltimore arrest had been timely and should therefore be reinstated. The district court denied Fidelity's motion to reconsider on May 11, 2005. Fidelity then filed an interlocutory appeal that this court dismissed on October 3, 2005.

In the meantime, on the same day (April 8, 2005) that the Nigerian court had revived Fidelity's case in that country, Eres

6

and Northern Fox answered Fidelity's complaint in this action and asserted a counterclaim.  In their three-count counterclaim, Eres and Northern Fox sought a declaratory judgment that Fidelity's claims are time-barred, $200,000 in damages for wrongful arrest in Baltimore, and $1.5 million in demurrage costs on the original 2002 contract of carriage.

No discovery was conducted while this case was pending in the district court.  A pretrial order was submitted that included lists of lay witnesses, experts, and exhibits.  On September 23, 2005, Eres and Northern Fox filed a motion for summary judgment.  While that motion was pending, Fidelity moved on October 12, 2005, to dismiss its complaint without prejudice pursuant to Fed. R. Civ. P. 41(a)(2) and to dismiss the entire action under the doctrine of forum non conveniens.  Fidelity made this motion in district court immediately after this court dismissed its interlocutory appeal.  The district court on December 9, 2005, granted Fidelity's Rule 41(a)(2) motion to dismiss its complaint.  In the same order the court dismissed Eres and Northern Fox's entire counterclaim on forum non conveniens grounds.  The district court concluded that the claims asserted in the counterclaim could be adjudicated in Nigeria where "Fidelity's breach of contract claim, involving the same facts, is currently pending in a Nigerian court."  J.A. 757.

On December 20, 2005, shortly after the district court dismissed this action, the Nigerian Federal High Court issued an

7

order discharging its earlier order that would have allowed Fidelity to serve Eres and Northern Fox by courier. The Nigerian court went on to state (1) that there was no _in rem_ jurisdiction over the TABORA in Nigeria, and (2) that the original writ of summons was still valid _in personam_ against Eres and Northern Fox, but that a further order would be required for service to be undertaken. On December 23, 2005, Eres and Northern Fox filed a motion asking the district court in Maryland to reconsider the dismissal of their counterclaim. They asserted that the Nigerian court's December 20, 2005, ruling made clear that Fidelity did not, as a practical matter, have a case pending in Nigeria because there was no _in rem_ claim remaining, and Fidelity could not obtain personal jurisdiction over them in Nigeria. Thus, according to Eres and Northern Fox, Nigeria does not provide an adequate forum for the adjudication of their counterclaim against Fidelity. The district court denied Eres and Northern Fox's motion for reconsideration. The court reasoned that because the 2002 writ of summons in Nigeria is still valid, Fidelity has a claim pending there, and Nigeria continues to provide an alternate forum for the resolution of the claims asserted in Eres and Northern Fox's counterclaim.

The defendants Eres and Northern Fox appeal the district court's orders (1) granting Fidelity's motion to dismiss its complaint under Rule 41(a)(2), (2) dismissing on _forum non_

8

_conveniens_ grounds their counterclaim against Fidelity, and (3) denying their motion for reconsideration of the dismissal of their counterclaim.

## II.

### A.

We first consider Eres and Northern Fox's argument that the district court erred in granting Fidelity's motion to dismiss its complaint under Fed. R. Civ. P. 41(a)(2).

The rule provides that:

> an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Fed. R. Civ. P. 41(a)(2). The purpose of this rule "is freely to allow a voluntary dismissal[]," _Davis v. USX Corp._, 819 F.2d 1270, 1273 (4th Cir. 1987), unless there is "plain legal prejudice to the defendant," _Ellet Bros. v. United States Fid. & Guar. Co._, 275 F.3d 384, 388 (4th Cir. 2001). Factors that may bear on whether the defendant will suffer legal prejudice by a dismissal include, among others, (1) the plaintiff's diligence in moving for a voluntary dismissal, (2) the stage of the litigation, including the

defendant's effort and expense in preparing for trial, and (3) the adequacy of the plaintiff's explanation for the need to dismiss. See, e.g., <u>Phillips USA, Inc. v. Allflex USA, Inc.</u>, 77 F.2d 354, 358 (10th Cir. 1996); <u>Zagano v. Fordham Univ.</u>, 900 F.3d 12, 14 (2d Cir. 1990). We review a district court's grant of Rule 41(a)(2) dismissal for abuse of discretion. <u>Davis</u>, 819 F.2d at 1273.

The defendants Eres and Northern Fox argue that they were prejudiced in several ways by the Rule 41(a)(2) dismissal of Fidelity's complaint. They also argue that the text of the rule prohibited the district court from granting a voluntary dismissal of Fidelity's complaint in conjunction with granting a dismissal of their counterclaim on <u>forum non conveniens</u> grounds. As we explain below, these arguments are not persuasive.

Eres and Northern Fox argue that they were prejudiced because the dismissal deprived them of a ruling on their pending motion for summary judgment, which had been fully briefed. These defendants sought judgment on the grounds that Fidelity's claims for non-delivery of cargo and for security for the Nigerian suit were barred by the one-year statute of limitations contained in the Hague Rules. To begin with, Rule 41(a)(2), which requires court approval, only applies when an answer or motion for summary judgment has been filed. Thus, "the mere filing of . . . a motion for summary judgment [is] not, without more, [] a basis for refusing to dismiss without prejudice." <u>Andes v. Versant Corp.</u>,

10

788 F.2d 1033 n.4 (4th Cir. 1986). Eres and Northern Fox claim prejudice here because their failure to get a ruling (one they believe would have been favorable) on their summary judgment motion places the TABORA at risk for yet another action by Fidelity seeking the vessel's arrest. This argument fails because "the prospect of a subsequent lawsuit does not constitute prejudice for purposes of Rule 41(a)(2)." Ellet Bros, 275 F.3d at 388-89. Eres and Northern Fox further claim that the dismissal stripped them of a viable statute of limitations defense against Fidelity's claims for non-delivery of cargo and for security for the Nigerian suit. These defendants rely on the one-year time bar under the Hague Rules that were incorporated into the bills of lading. However, should Fidelity file another action, Eres and Northern Fox would be free to reassert the limitations defense afforded by the Hague Rules.

Eres and Northern Fox also claim prejudice from the dismissal with the argument that Fidelity delayed until the suit had reached an advanced stage before making its Rule 41(a)(2) motion, causing them to have spent considerable effort and expense in preparing for trial. Fidelity was not dilatory in making its motion; it moved immediately after this court dismissed its interlocutory appeal. It is true that a pretrial order was filed by the parties, but that came while Fidelity's Rule 41(a)(2) motion was pending. Moreover, no discovery whatsoever had been

11

undertaken.  In these circumstances, we will not second guess the district court's assessment that the "case [was] at an early stage" when the Rule 41(a)(2) dismissal order was entered.  J.A. 756.

Finally, Eres and Northern Fox assert that the district court acted contrary to the plain language of Rule 41(a)(2) by not allowing their "counterclaim [to] remain pending for independent adjudication by the court." Fed. R. Civ. P. 41(a)(2).  This argument is without merit.  The defendants' counterclaim did actually remain pending for independent adjudication after the district court decided to dismiss Fidelity's complaint.  The court simply proceeded immediately to consider, and then grant, Fidelity's motion to dismiss the defendants' counterclaim on <u>forum non conveniens</u> grounds.  The court did not err in dismissing both the complaint and the counterclaim in the same order.

In sum, Eres and Northern Fox have not shown plain legal prejudice as a result of, and the district court did not abuse its discretion in entering, the order dismissing Fidelity's complaint under Rule 41(a)(2).

### III.

Eres and Northern Fox assert that the district court erred in dismissing their counterclaim under the common law doctrine of <u>forum non conveniens</u>.  (Because the counterclaim

12

contained three counts, we will, for ease of discussion, refer to the counts as counterclaims.)  The district court determined that the counterclaims could be adjudicated adequately and more conveniently in the courts of Nigeria.  "The common-law doctrine of forum non conveniens has continuing application in federal courts only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigation convenience best."  Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 127 S. Ct. 1184, 1190 (2007) (internal quotation marks, alterations, and citation omitted).  In assessing whether dismissal is appropriate on forum non conveniens grounds, a court must first "determine whether there exists an alternative forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981).  The existence of an alternative forum depends on two factors: availability and adequacy.  See In re Air Crash Disaster near New Orleans, 812 F.2d 1147, 1165 (5th Cir. 1987).  "Ordinarily, [the availability] requirement will be satisfied when the defendant is 'amenable to process' in the [foreign] jurisdiction."  Piper Aircraft, 454 U.S. at 254 n.22 (quoting Gulf Oil v. Gilbert, 330 U.S. 501, 506-07 (1947)).  A foreign forum is adequate when "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not 'be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'"  Mercier v. Sheraton Int'l, Inc.,

935 F.2d 419, 424 (1st Cir. 1991) (quoting In re Air Crash Disaster, 821 F.2d at 1165)). The burden is on the moving party to show that an alternative forum exists. Kontoulas v. A.H. Robins Co., Inc., 745 F.2d 312, 316 (4th Cir. 1984).

If an alternate forum exists, the court must then weigh the familiar private and public interest factors that the Supreme Court laid out in Gulf Oil.* At this step of the analysis, the movant continues to bear the burden to "provide enough information to enable the District Court to balance the parties' interests." Id. at 258.

We review a district court's forum non conveniens decision for abuse of discretion. Id. at 257. "An abuse of discretion may occur when the district court fails to consider one or more of the important private or public interest factors, does

---

*The private interest factors focus on the litigants and include the consideration of the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Piper Aircraft, 454 U.S. at 241 n.6 (quoting Gulf Oil, 330 U.S. at 508). The public interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Id. (quoting Gulf Oil, 330 U.S. at 509).

14

not hold the [movant] to [its] burden of persuasion on all elements of the forum non conveniens analysis, or has clearly erred in weighing the factors the court must consider." Reid-Walen v. Hansen, 933 F.2d 1390, 1394 (8th Cir. 1991).

A.

The district court gave two reasons why Nigeria provides an adequate forum to adjudicate Eres and Northern Fox's counterclaims that seek (1) a declaration that Fidelity's claims are time-barred, (2) damages for the wrongful arrest of the TABORA in Baltimore, and (3) demurrage under the original 2002 contract of carriage. First, the district court stressed that these counterclaims "involv[e] the same facts" as the breach of contract claim that Fidelity has "currently pending" in Nigeria. J.A. 757. Second, the court said, "Although Defendants [Eres and Northern Fox] have asserted that their witnesses face criminal confinement and prosecution in that forum, they have provided no evidence supporting this assertion." J.A. 757. The district court then concluded that the relevant private and public interest factors favor dismissal. According to the court, the following private interests of the parties favored dismissal: (1) the parties are all foreign corporations; (2) all relevant events took place within the jurisdiction of Nigeria; (3) the court cannot compel the attendance of foreign witnesses; (4) it would be expensive to litigate the counterclaims in the District of Maryland; and (5) the

15

ability of the court to enforce a judgment is limited. The public interest factors cited by the court as favoring dismissal were: (1) the absence of any connection between the district of Maryland, the parties, and facts of the case and (2) the added burden to the court in interpreting and applying foreign law.

Eres and Northern Fox contend that the district court abused its discretion by failing to hold Fidelity to its burden to establish the adequacy of the alternative forum. Specifically, they assert that Fidelity's submissions to the district court addressed only the adequacy of the Nigerian forum for the adjudication of Fidelity's claims; Fidelity's submissions did not deal sufficiently with the adequacy of Nigeria as an alternative forum for the counterclaims of Eres and Northern Fox. Eres and Northern Fox thus contend that Fidelity has not shown that Nigeria is an adequate place to litigate their counterclaims, especially their Baltimore-based wrongful arrest claim. Eres and Northern Fox argue further that the district court focused too much on the fact that Fidelity has a claim pending in Nigeria and failed to give sufficient attention to the central question of whether Nigeria is an adequate forum for the counterclaims. They also assert that the district court erred in weighing the public and private interest factors by failing to acknowledge and address the specific facts underlying the counterclaim for wrongful arrest in Baltimore.

16

Fidelity concedes that in granting the forum non conveniens dismissal the district court did not address the counterclaims with any specificity. However, according to Fidelity, "a finding that [Fidelity's claim] can be adequately adjudicated in Nigeria includes the finding that the Counterclaim can be adjudicated there as well." Appellee's Br. at 26. Along these lines, Fidelity asserts that two of the three counterclaims are not independent claims at all: the demurrage claim is essentially a set-off to Fidelity's own breach of contract and conversions claims, and the claim for declaratory relief merely raises the threshold question of whether Fidelity's own claims are time-barred. In addition, Fidelity maintains that the "wrongful arrest claim is a very small portion of the Counterclaim" and that its resolution hinges on whether the 2002 Nigerian action eliminates the defendants' statute of limitations defense. Id. at 32.

As we explain below, we agree with the district court's dismissal of the counterclaims for declaratory relief and demurrage. The wrongful arrest counterclaim is a different matter, however. In dismissing that counterclaim, the district court erred at both steps of the forum non conveniens analysis.

B.

In attempting to establish the adequacy of Nigeria as an alternative forum, Fidelity submitted an affidavit from its

17

Nigerian counsel, Louis Mbanefo. The Mbanefo affidavit discusses the action Fidelity filed in 2002 in Nigeria and asserts that Fidelity's claims for breach of contract and conversion are best adjudicated as part of that case. Mbanefo explains that the acts giving rise to these claims occurred in Nigerian waters. His affidavit, however, makes only a single, passing mention of one of the three counterclaims filed by Eres and Northern Fox. Specifically, he asserts that "the Federal High Court [of Nigeria] is in the best position to determine . . . [w]hether a vessel which never berthed in Lagos Port can give Notice of Readiness and claim demurrage." J.A. 679. Notwithstanding this cursory treatment, we agree with Fidelity that the defendants' counterclaims for demurrage and declaratory relief are tightly intertwined with Fidelity's claims for breach of contract and conversion. As a result, the Mbanefo affidavit provided the district court with a sufficient basis to conclude that Nigeria provides an adequate forum for the adjudication of those two counterclaims.

Eres and Northern Fox's counterclaim for the wrongful arrest of the TABORA in the Port of Baltimore is a different matter, however. The Mbanefo affidavit does not discuss whether Nigerian law recognizes a claim for wrongful arrest. Moreover, even if such a claim is cognizable, the affidavit does not explain whether the Nigerian courts would take jurisdiction over a disputed arrest that occurred in the United States. We recognize, of

18

course, that Eres and Northern Fox did not submit any evidence to the district court suggesting that the Nigerian courts would not hear their wrongful arrest claim. But it was Fidelity's burden to establish that an adequate alternative forum exists. See Mercier, 935 F.2d at 425. Because "the affidavit through which [Fidelity] attempted to meet its burden contains substantial gaps, we believe the district court acted prematurely in finding that [Nigeria] is an adequate alternative forum" for resolution of the counterclaim for wrongful arrest. Id. We do not dispute Fidelity's assertion that the question of whether the arrest was wrongful may ultimately turn on questions of foreign law. Instead, we simply conclude that the record before the district court was so fragmentary as to make it "impossible to make a sound determination of whether" Nigeria provides an adequate alternative forum to resolve the wrongful arrest counterclaim. El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 677 (D.C. Cir. 1996) (internal quotation omitted).

C.

While we find no abuse of discretion in the district court's consideration of the public and private interest factors in regard to the counterclaims for demurrage and declaratory relief, we do find error in its treatment of these factors with respect to the wrongful arrest counterclaim. The district court stated that the "district [of Maryland] has no connection to the parties or the facts of the case." J.A. 758. Thus, the district court did not

19

appear to consider that the wrongful arrest counterclaim arose in Baltimore, where the arrest of the TABORA took place. We offer no opinion as to the ultimate importance of the place of arrest, but here it does suggest the possibility of a local interest in the dispute. See Gulf Oil, 330 U.S. at 509. Accordingly, because the district court's analysis of the public and private interest factors failed to consider the possibility of a local interest in the adjudication of this claim, those factors should be re-weighed on remand. See Reid-Walen, 933 F.2d at 1394; Irish Nat'l Ins. Co. v. Aer Lingus Teoranta, 739 F.2d 90, 92 (2d Cir. 1984).

D.

We conclude that Fidelity did not meet its burden of showing that Nigeria provides an adequate alternative forum for the adjudication of Eres and Northern Fox's counterclaim for wrongful arrest. Moreover, the district court did not appear to consider fully the local interest factor in weighing the public and private interest factors as they relate to the wrongful arrest counterclaim. We will therefore vacate the district court's forum non conveniens order to the extent it dismisses the wrongful arrest counterclaim and remand that issue for further consideration. See El-Fadl, 75 F.3d at 679-80 (vacating forum non conveniens dismissal and remanding for further consideration).

Finally, we turn to the district court's denial of Eres and Northern Fox's motion for reconsideration pursuant to Rules 59(e) and 60(b). Our review is for abuse of discretion. Boryan v. United States, 884 F.2d 767 (4th Cir. 1989). We reject the defendants' contention that the December 20, 2005, ruling of the Nigerian court renders the district court's forum non conveniens dismissal of their declaratory relief and demurrage counterclaims improper. While the December 20, 2005, order of the Nigerian court did set aside the earlier order relating to service of process, it also stated that the original writ of summons remains valid. As a result, the district court did not abuse its discretion in concluding that the declaratory relief and demurrage counterclaims could be litigated in connection with Fidelity's Nigerian action. The forum non conveniens analysis with respect to Eres and Northern Fox's counterclaims is not changed by the fact that these two parties have not been successfully served in the Nigerian suit. The Nigerian forum is available to Eres and Northern Fox because they "can come within that forum's jurisdiction" by answering Fidelity's Nigerian complaint. Mercier, 935 F.2d at 424. Moreover, there is no question that the defendant for purposes of the counterclaims, Fidelity, is amenable to process in Nigeria. See Piper Aircraft, 454 U.S. at 255 n.22 (explaining that a foreign forum is available "when the defendant is 'amenable to process' in

21

the other jurisdiction") (quoting <u>Gulf Oil</u>, 330 U.S. at 506-07) (emphasis added). Accordingly, we affirm the district court's denial of the motion for reconsideration with respect to the demurrage and declaratory relief counterclaims. Our conclusion in part II moots the reconsideration issue with respect to the wrongful arrest counterclaim.

V.

In sum, while we conclude that Fidelity's own complaint and two of the three counterclaims filed against Fidelity were properly dismissed, we also conclude that the district court abused its discretion in granting dismissal of the wrongful arrest counterclaim based on <u>forum non conveniens</u>. The orders of the district court are therefore affirmed, except that the portion of the order granting the dismissal of the wrongful arrest counterclaim is vacated, and the <u>forum non conveniens</u> issue with respect to that counterclaim is remanded for further consideration.

<u>AFFIRMED IN PART</u>,
<u>VACATED IN PART</u>,
<u>AND REMANDED</u>

22