**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JIALI TANG; YONGDE LIU, in their own capacities, and ex rel. X. L., a minor; PING MU; XIA CHANG, in their own capacities, and ex rel. Y. M., a minor; DEDONG MA; HONGXIU LU, in their own capacities, and ex rel. L. M., a minor; RUIJIE LIU; SONGXIA ZHU, in their own capacities, and ex rel. Y. L., a minor; XIANGHONG LIU; JIAOYAN ZHU, in their own capacities, and ex rel. S. L., a minor; SHUYONG YAO; FENGQIONG BAO, in their own capacities, and ex rel. Y. Y., a minor; LIHONG MENG; FENG ZHAO, in their own capacities, and ex rel. F. Z., a minor; XIAOPING CHANG; YOUJIAN MA, in their own capacities, and ex rel. L. M., a minor; YANMIAO CAO; ZHAODI LIN, in their own capacities, and ex rel. Z. C., a minor; HONG LIU; JUNJIE LIU, in their own capacities, and ex rel. J. L., a minor; YAJUN HE; BING WANG, in their own capacities, and ex rel. Y. W., a minor;

No. 10-1487

CHUNNIAN WANG, in his own capacity, and ex rel. Y. W., a minor; CHUANG WANG; RUI ZHANG, in their own capacities, and ex rel. Y. W., a minor; QIGUO SHU; MEIHONG REN, in their own capacities, and ex rel. R. S., a minor; ZHAOXIA XING; XINQIANG HUANG, in their own capacities, and ex rel. H. H., a minor; WEN CHEN; XIANG HE, in their own capacities, and ex rel. G. C., a minor; QI CHEN; LI XUE, in their own capacities, and ex rel. J. C., a minor; XIANWEI HONG; DANDAN HUANG, in their own capacities, and ex rel. Z. H., a minor; JINRONG ZHU; JIALONG ZHANG, in their own capacities, and ex rel. J.Z., a minor; XINJUN WANG; FEI LI, in their own capacities, and ex rel. H. W., a minor; XIAOFEI HE; RUIZHONG TIAN, in their own capacities, and ex rel. F. T., a minor; HAIBO ZHAO; XINGPING JIA, in their own capacities, and ex rel. C. Z., a minor; JUN PENG; LI FANG, in their own capacities, and ex rel. Q. P., a minor;

XIAOLI DU; JIANG LI, in their own capacities, and ex rel. M. L., a minor; XIN LIU; YAN ZHU, in their own capacities, and ex rel. W. L., a minor; GANG MENG; HAIYAN WANG, in their own capacities, and ex rel. Y. M., a minor; ZHAOXIA JI; JIAYING NIU, in their own capacities, and ex rel. Z. N., a minor; MEI CHENG; WEI CHEN, in their own capacities, and ex rel. Q. C., a minor; DONGRONG LI; GUOAN ZHANG, in their own capacities, and ex rel. B. Z., a minor; DONGYAN YU; WEI QIN, in their own capacities, and ex rel. Z. Q., a minor; ZHENGYA SHAO; YI LI, in their own capacities, and ex rel. H. S., a minor; JIE GAO; CHUNCHENG XU, in their own capacities, and ex rel. G. X., a minor; MING HU; YANLING YAN, in their own capacities, and ex rel. Z. Y., a minor; GUANGLU LIU; LIMEI CHEN, in their own capacities, and ex rel. S. L., a minor; HONG LIU;

Yong Fei, in their own capacities, and ex rel. C. F., a minor; Ruida Wang; Xiaoyu Li, in their own capacities, and ex rel. C. W., a minor; Erjian An; Changjing Huangfu, in their own capacities, and ex rel. Y. A., a minor; Yuan Zhang; Haitao Nan, in their own capacities, and ex rel. Y. N., a minor; Xiaofei Xie; Qiqi Xiong, in their own capacities, and ex rel. Y. X., a minor; Dongwei Zhou; Yan Zheng, in their own capacities, and ex rel. X. Z., a minor; Wei Zhao; Changyu Liu, in their own capacities, and ex rel. Y. W., a minor; Xing Wen; Yan Yue, in their own capacities, and ex rel. Y. W., a minor; Renyin Fan; Yaping Hu, in their own capacities, and ex rel. T. F., a minor; Jianhua Chen; Ning Xia, in their own capacities, and ex rel. J. C., a minor;

Yuan Wen, in his own capacity, and ex rel. T. W., a minor; Xingzhi Zhu; Fangkai Yang, in their own capacities, and ex rel. Z. Y., a minor; Ping Du, in her own capacity, and ex rel. X. X., a minor; Wei Zhang, in his own capacity, and ex rel. K. Z., a minor; Lin Chen; Jie You, in their own capacities, and ex rel. J. Y., a minor; Yinghao Zhang, in his own capacity, and ex rel. Y. Z., a minor; Jinghai Yang; Jiangli Wang, in their own capacities, and ex rel. H. Y., a minor; Dianjun Wang; Junli Sun, in their own capacities, and ex rel. X. W., a minor; Yunpeng Ge; Qi Hou, in their own capacities, and ex rel. Y. G., a minor,

*Plaintiffs-Appellants,*

v.

Synutra International, Incorporated; Synutra, Incorporated, a/k/a American St. George Biological Technology Corporation,

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, Chief District Judge.
(8:09-cv-00088-DKC)

Argued: March 22, 2011

Decided: September 6, 2011

Before KING, GREGORY, and WYNN, Circuit Judges.

---

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge King and Judge Gregory concurred.

---

## COUNSEL

**ARGUED:** Paul George Gaston, LAW OFFICES OF PAUL G. GASTON, Washington, D.C., for Appellants. James Arden, SIDLEY & AUSTIN, LLP, New York, New York, for Appellees. **ON BRIEF:** Paul J. Zidlicky, SIDLEY & AUSTIN, LLP, Washington, D.C.; Sara J. Gourley, SIDLEY & AUSTIN, LLP, Chicago, Illinois; Eamon P. Joyce, SIDLEY & AUSTIN, LLP, New York, New York, for Appellees.

---

## OPINION

WYNN, Circuit Judge:

"A *forum non conveniens* dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum."[1] Plaintiffs in this case are citizens and residents of China who allege that they were injured by melamine-contaminated infant formula in China. The contaminated products were manufactured

---

[1] *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 315 (4th Cir. 1984) (citation omitted).

and distributed exclusively in China by, among others, Sheng Yuan Nutritional Food Company ("Sheng Yuan")—a Chinese subsidiary of Synutra International, Incorporated and Synutra, Incorporated (collectively "Synutra"). Because Synutra's principal place of business is in Maryland, Plaintiffs brought this action in Maryland seeking to recover damages for their alleged injuries that occurred in China. China, however, is an available, adequate, and more convenient forum to redress Plaintiffs' grievances; accordingly, we affirm the district court's *forum non conveniens* dismissal.

## I.

In 2008, Chinese officials learned of widespread reports that infants in China had died or become severely ill after consuming infant formula. An investigation showed that infant formula manufactured by twenty-two Chinese companies was contaminated with melamine, a chemical which is unfit for human consumption and may afflict the kidneys.[2] One of these companies was Sheng Yuan, a subsidiary of Synutra. According to Synutra's 2009 financial statement to the United States Securities and Exchange Commission, Sheng Yuan produced, marketed and sold infant formula products in China,

> [d]irectly or through its wholly owned subsidiary, Synutra, Inc[orporated], an Illinois corporation ("Synutra Illinois"), Synutra International, Inc. (collectively with its subsidiaries, "the Company" or "Synutra") owns all or majority of the equity interests of the companies in the People's Republic of China ("China" or "PRC") that are principally engaged in the production, marketing and distribution of dairy based nutritional products under the

---

[2]Plaintiffs' complaint, and media reports included in the record, suggest that melamine was used to boost the infant formula's protein content.

> Company's own brands in China. The Company is a leader in sales of infant formula products in China.
>
> The Company produces, markets and sells nutritional products under "Sheng Yuan," or "Synutra," its master brand, and several sub-brands, including "Super," "U-Smart," and "U-Strong."

On September 16, 2008, Synutra issued a press release in China recalling the "U-Smart" line of formula products. In the press release, Synutra acknowledged that batches of its U-Smart products were found to be contaminated, and the company expressed regret for harm caused to Chinese children. Synutra believed "that the melamine contamination resulted from tainted milk supplies provided by third-party suppliers in the Hebei and Inner Mongolia regions of China."

In December 2008, the Chinese government established a fund to compensate the children and families affected by contaminated infant formula ("the Fund"). The Chinese government executed contracts with the twenty-two responsible infant formula manufacturers, which agreed to contribute to the Fund. The Chinese government agreed to administer the Fund by making distributions, through China Life Insurance Company Limited, to affected children and their families.

In March 2009, a government official estimated that "over 95% of 300,000 infants with different levels of suffering from baby formula ha[d] accepted compensation" from the Fund, thus waiving their rights to sue. But some of the victims elected to bring civil lawsuits in China's courts in lieu of accepting compensation from the Fund. The record shows that some of those lawsuits were accepted[3] by provincial or municipal-level Chinese courts. On March 2, 2009, Shen

---

[3]Under Chinese civil procedure, a plaintiff may initiate an action by filing a motion of complaint, which the court is required either to accept or reject within seven days of filing.

Deyong, Executive Vice President of the Supreme People's Court, the highest court in the People's Republic of China, officially announced that the court "is prepared and ready to hear these cases according to law at any time."

On the other hand, the record also shows evidence that some of the contaminated infant formula lawsuits were stymied by China's courts and government officials. For instance, in 2008, the United States' Congressional-Executive Commission on China[4] released a report stating:

> Chinese authorities are preventing citizens with grievances related to tainted milk products from using the judicial system to seek redress. They have invoked the importance of "maintaining social stability" in seeking to thwart efforts to organize large groups of angry citizens through collective lawsuits.

> By early October, more than 100 lawyers nationwide had joined forces to offer free legal aid to the parents of babies who had fallen sick from tainted milk. Many of the lawyers have been pressured to withdraw from the group. . . . Judicial authorities in some provinces have told volunteer lawyers that litigation could lead to "social unrest."

*Staff of Cong.-Exec. Comm'n on China, 110th Cong.*, Annual Report 164 (2008). Additionally, consistent with the Commission's findings, affidavits from at least two Chinese lawyers stated that Chinese courts continued to delay contaminated infant formula cases even after the Supreme People's Court's

---

[4]The Congressional-Executive Commission on China was created by Congress in 2000 as a bipartite body, consisting of federal legislators and executive-branch officials, whose purpose in part is to "monitor the development of the rule of law in the People's Republic of China . . . ." 22 U.S.C. § 6912(c); *see also id.* §§ 6911 (establishing the Commission), 6913 (prescribing the Commission's membership).

March 2, 2009 announcement. These lawyers acknowledged, however, that at least two cases were eventually accepted.[5] One of the lawyers also asserted that he was pressured by government officials to withdraw from contaminated infant formula litigation.

On January 15, 2009, in lieu of accepting compensation under the Fund, Plaintiffs in this matter chose to institute this action against Synutra in the United States District Court in Maryland, rather than in China. They alleged various causes of action based on Synutra's role in producing, marketing, and distributing contaminated U-Smart products. Synutra moved to dismiss the complaint on the basis of, *inter alia*, *forum non conveniens*, contending that China is a more convenient forum for Plaintiffs' claims. Plaintiffs opposed Synutra's motion, and both parties submitted affidavits from Chinese lawyers and law professors familiar with the contaminated infant formula incident and related lawsuits.

The district court, in ruling on the motion, found China to be an available forum based on the affidavit of Synutra's President, Weiguo Zhang, who affirmed that Synutra would not contest service of process if Plaintiffs filed this lawsuit in China. *Tang v. Synutra Int'l, Inc.*, No. DKC 09-0088, 2010 WL 1375373, *5 (D. Md. Mar. 29, 2010). Next, the district court found that China is an adequate forum, despite conflicting evidence regarding the willingness of China's courts to hear and resolve contaminated formula cases. The district court also deemed China adequate because "[e]ven if the Chinese courts were not open to Plaintiffs, another remedy is undisputedly available to them, namely, the [Fund]." *Id.* at *10. Finally, the district court weighed the public and private interests and concluded that they "overwhelmingly" favored China as the more appropriate forum for this dispute. *Id.* at

---

[5]A third affiant suggests that these two cases were only accepted because they involved small damage claims against Sanlu Group, another manufacturer that was previously declared bankrupt.

*12. According to the district court, "The District of Maryland has comparatively little interest in a case involving the extent of liability, if any, of an international holding company and its subsidiary for injuries inflicted abroad . . . ." *Id.* at *13. The district court therefore dismissed the complaint under the doctrine of *forum non conveniens*. Plaintiffs appeal.

## II.

A *forum non conveniens* dismissal is reviewable for an abuse of discretion, and the district court's "decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). However, the Supreme Court has established an analytical framework which, as applied by this Court, must guide the district court's analysis. A district court must determine whether the alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved. *Id.* at 241 (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947)); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). The moving party bears the burden of showing that an adequate alternative forum exists. *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010); *Fid. Bank PLC v. N. Fox Shipping N.V.*, 242 F. App'x 84, 90 (4th Cir. 2007) (unpublished).

Availability will ordinarily "be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 255 n.22 (quoting *Gilbert*, 330 U.S. at 506-07). "A foreign forum is adequate when '(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'" *N. Fox Shipping*, 242 F. App'x at 90 (quoting *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991)). "In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative,

and the initial requirement may not be satisfied." *Piper Aircraft*, 455 U.S. at 254 n.22.

If the alternative forum is both available and adequate, the district court must weigh the public and private interest factors.

> The factors pertaining to the private interests of the litigants include[ ] the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S., at 508, 67 S.Ct., at 843. The public factors bearing on the question include[ ] the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*, at 509, 67 S.Ct., at 843.

*Piper Aircraft*, 454 U.S. at 241 n.6. A district court may abuse its discretion if "'it fail[ed] to consider a material factor or clearly err[ed] in evaluating the factors before it, or [did] not hold the defendants to their burden of persuasion on all elements of the *forum non conveniens* analysis.'" *Galustian*, 591 F.3d at 731 (alteration in original) (quoting *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 677 (D.C. Cir. 1996), *abrogated on other grounds by*, *Samantar v. Yousuf*, 130 S. Ct. 2278 (2010)). With these principles in mind, we now turn to the parties' arguments.

### III.

First, Plaintiffs argue that the district court abused its discretion by relieving Synutra of its burden to show an adequate alternative forum. We disagree.

In support of their argument that the district court misallocated the burden of proof, Plaintiffs extract the following from the district court's decision:

> While courts have strictly required defendants to demonstrate that the alternative forum offers "at least some relief," they "have not always required that defendants do much to refute allegations of partiality and inefficiency in the alternative forum." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). Many courts have presumed the adequacy of the alternative forum and placed at least the burden of production on the plaintiff to establish otherwise. *See Leon*, 251 F.3d at 1312; *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 393-94 (5th Cir. 1983), *overruled on other grounds by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987). These courts, moreover, have rejected generalized and conclusory allegations by plaintiffs as being insufficient to carry this burden, requiring instead that an evidentiary showing be made in support of claims that the alternative forum is inadequate. *See El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 678 (D.C. Cir. 1996); *Mercier v. Sheraton Int'l Inc.*, 981 F.2d 1345, 1351 (1st Cir. 1992), *cert. denied*, 113 S. Ct. 2346 (1993). As the United States Court of Appeals for the Eleventh Circuit explained in *Leon*, 251 F.3d at 1312, "defendants have the ultimate burden of persuasion, but only where plaintiff has substantiated his allegations of serious corruption or delay."

*Tang*, 2010 WL 1375373, at *4. Viewing this excerpt in isolation, Plaintiffs argue that the district court improperly relieved

Synutra of its burden to show an adequate alternative forum. But a review of the rest of the district court's decision shows that the district court properly placed the burden of proof on Synutra at all stages of the *forum non conveniens* analysis.

Indeed, the district court properly allocated the burden of proof. First regarding availability, the district court stated that "availability is established where the *defendant* shows that it is 'amenable to process' in the alternative forum." *Id.* at *5 (emphasis added) (quoting *Piper Aircraft*, 454 U.S. at 254 n.22). Synutra satisfied that burden with affidavits stating that Plaintiffs were not barred by a statute of limitations and that Synutra would not contest service of process in China. *Id.* at *5-6. As to adequacy, the district court considered the parties' conflicting affidavits and concluded that "[u]nder the low threshold established by the Supreme Court in *Piper Aircraft Co.*, *Defendants* have met their burden of showing that China is an adequate forum." *Id.* at *10 (emphasis added). Finally, the district court concluded that "Defendants have convincingly met their burden of demonstrating that the private and public interest factors at issue favor the Chinese forum and disfavor litigation in the District of Maryland." *Id.* at *13.

Because the district court properly placed the burden of proof on Synutra at all stages of its analysis, we find no abuse of discretion.

IV.

Next, Plaintiffs argue that the district court erred in evaluating China's adequacy as an alternative forum. Specifically, Plaintiffs contend that the district court elevated Synutra's "general" evidence that China has an adequate judicial system over Plaintiffs' "specific" evidence that Chinese courts and officials discouraged contaminated formula cases. We find no merit to this argument.

Initially, we observe that Plaintiffs do not dispute their eligibility to receive compensation from the Fund in China.

Thus, Plaintiffs are essentially arguing that China is an inadequate forum because they cannot obtain in China a judicial remedy in lieu of the Fund. But, the *forum non conveniens* doctrine does not limit adequate alternative remedies to *judicial* ones. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144-45 (9th Cir. 2001). Indeed, the reach of the doctrine extends to nonjudicial alternative remedies such as the Fund which was established to specifically redress the grievances of contaminated formula victims. *See id.* Additionally, the Fund is not an inadequate remedy merely because Plaintiffs "'may not enjoy the same benefits as they might receive in an American court.'" *N. Fox Shipping*, 242 F. App'x at 90 (quoting *Mercier*, 935 F.2d at 424); *see also Lueck*, 236 F.3d at 1143 ("The district court was not required to ask whether plaintiffs could bring this lawsuit in New Zealand, but rather, whether New Zealand offers a remedy for their losses."). Significantly, Plaintiffs do not argue that compensation from the Fund "is so clearly inadequate or unsatisfactory, that it is no remedy at all . . . ." *Lueck*, 236 F.3d at 1143. Accordingly, the Fund alone supports our conclusion that the district court did not abuse its discretion in deeming China an adequate forum.

Further, even if the *forum non conveniens* doctrine did require the existence of an adequate alternative *judicial* remedy, the record in this matter shows that the district court did not abuse its discretion in finding that Synutra "met [its] burden of showing that China is an adequate forum." *Tang*, 2010 WL 1375373, at *10. Although Plaintiffs characterize Synutra's evidence as a "general" showing that China has an adequate judiciary, Synutra actually introduced substantial evidence that China's courts are available to hear contaminated formula cases. The record shows that at least two provincial courts accepted contaminated formula cases prior to the district court's decision, and an officer of China's highest court announced that court's readiness "to accept and hear these cases according to law at any time." Synutra submitted at least one affidavit explaining that inaction or delay by Chinese courts might be attributable to formal defects in the com-

plaints and not the courts' resistance to the subject matter of the cases. This evidence supports the district court's finding that Plaintiffs may seek a remedy in China's courts if they so elect, notwithstanding Plaintiffs' evidence to the contrary.

In sum, we uphold the district court's determination that China is an adequate forum because 1) the Fund is available to compensate Plaintiffs for their losses, and 2) substantial evidence supports the district court's finding that a judicial remedy is available in China.

V.

Plaintiffs also argue that the district court erred by accepting the Fund as an adequate remedy. They reject the Fund as a mere "settlement plan sponsored and supported by the wrongdoers themselves" that cannot "take the place of court decisionmaking and adjudication even for those claimants who refuse to accept the terms of that plan . . . ." *Brief of Appellant* at 25. We disagree.

Again, this argument is founded on the theory that Plaintiffs must have a judicial remedy in China before China can be considered an adequate forum. In section IV, we rejected this theory on two grounds: 1) the *forum non conveniens* doctrine does not limit adequate alternative remedies to judicial ones; and 2) the district court did not abuse its discretion by finding that China's courts are in fact available to hear Plaintiffs' claims. The first conclusion, in particular, is fatal to Plaintiffs' objection that the Fund is structured as a settlement.

Because a judicial remedy is not required, it is immaterial that Plaintiffs must waive their right to sue if they elect compensation from the Fund. *See Lueck*, 236 F.3d at 1143 (finding an adequate alternative remedy where New Zealand law did not permit an analogous tort action but provided a less rewarding administrative compensation scheme). We agree

with *Lueck* that the "*forum non conveniens* analysis does not look to the precise source of the plaintiff's remedy . . . ." *Id.* at 1145. Instead, courts determine whether an alternative remedy exists. *Id.*; *cf. Nemariam v. Fed. Democratic Republic of Eth.*, 315 F.3d 390, 394-95 (D.C. Cir. 2003) (finding prospective remedy from a multi-national commission between Eritrea and Ethiopia inadequate because plaintiff lacked a personal right to recover an award made by the commission); *EDAPS Consortium v. Kiyanichenko*, No. C 05-01931 WHA, 2005 WL 2000940, at *3 (N.D. Cal. Aug. 18, 2005) (holding Ukraine inadequate because no analogous judicial remedy existed and available administrative fines were payable to the government). Thus, the structure of the Fund as a settlement is not dispositive; it is enough that the Fund is available to compensate Plaintiffs for their losses. Therefore, we reject Plaintiffs' argument.

## VI.

Finally, Plaintiffs argue that the district court erred in weighing the relevant private and public interest factors because it focused on where Plaintiffs' injuries occurred (China) rather than where Synutra made its allegedly faulty decisions (Maryland). We disagree.

While this argument has some appeal, the *forum non conveniens* doctrine is ultimately concerned with convenience, not simply the locus of alleged wrongful conduct. *See Piper Aircraft*, 454 U.S. at 249 ("the central focus of the *forum non conveniens* inquiry is convenience"). In this case, the most relevant private interest factors are "the relative ease of access to sources of proof" and "availability of compulsory process" to obtain the attendance of witnesses. *Id.* at 241 n.6 (quotation marks omitted). The pertinent public interest factors are the "local interest in having localized controversies decided at home"; the avoidance of complex comparative law issues; and "the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (quotation marks omitted). Thus, the locus

of alleged wrongful conduct is just one of several private and public interest factors that should be weighed to determine whether the alternative forum is more convenient.

Here, the district court properly exercised its discretion in weighing the relevant factors. Noting that the contaminated formula products were manufactured, marketed, distributed, and consumed in China, the district court anticipated that most of the evidence and witnesses are in China. The court rightly observed that it lacks authority to compel the attendance of Chinese witnesses, greatly undermining a fact-finding effort in Maryland. *Tang*, 2010 WL 1375373, at *12; *see also Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1331-32 (11th Cir. 2011) (explaining that the district court's lack of compulsory process to obtain the attendance of Brazilian witnesses favored dismissal). Moreover, because much of the evidence will derive from Chinese witnesses, trial in an American court will require costly translators. In sum, the district court was well within its discretion in concluding that the private interest factors favor dismissal.

The same is true of the public interest factors. Because the contaminated infant formula was manufactured and distributed in China, the district court would likely encounter complex issues of Chinese law. The *forum non conveniens* doctrine exists largely to avoid such comparative law problems. *Piper Aircraft*, 454 U.S. at 251 ("The doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in comparative law."); *Galustian*, 591 F.3d at 732 (refusing to require an exhaustive comparison between Iraqi and American law). Further, we agree with the district court that China has a greater interest in this dispute—the contaminated formula products were distributed through the channels of Chinese commerce and consumed by Chinese citizens. Maryland's residents should therefore not be saddled with resolving the conflict. Moreover, Plaintiffs' choice to sue in the District of Maryland receives little deference because they are all Chinese citizens and residents. *See*

*Piper Aircraft*, 454 U.S. at 256. At bottom, the district court did not abuse its discretion by concluding that the public interest factors favor China as the most appropriate forum.

## VII.

In sum, we hold that Synutra carried its burden and showed that Plaintiffs can obtain a remedy for their injuries either from the Chinese courts or the Fund. Thus, the district court did not abuse its discretion in finding that China is an adequate alternative forum. Furthermore, the district court did not err by weighing the public and private interest factors and finding that China is a more convenient forum in which to adjudicate this dispute. Accordingly, the district court's *forum non conveniens* dismissal was not an abuse of discretion, and we affirm.

*AFFIRMED*